IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AKASH DIXIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-02602-JTF-atc |
| ) | |
| FEDRICK W. SMITH, BABITA ) | |
| TIWIRI, FEDEX COMPANY, TANYA ) | |
| SINGH, GREGORY D. GOLDEN, AND ) | |
| KUPFERMAN AND GOLDEN FIRM, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION ON OUTSTANDING MOTIONS**

Before the Court[1] are two motions filed by *pro se* Plaintiff Akash Dixit. The first is his Emergency Motion for Preliminary/Interlocutory Injunctions (the "Injunction Motion"), filed April 17, 2022. (ECF No. 21.) Defendants Fredrick W. Smith, Babita Tiwari, and Federal Express Corporation (the "FedEx Defendants")[2] filed their response on May 3, 2022. (ECF No. 26.) The next is Dixit's Second Motion for Sanctions (the "Sanctions Motion"), filed August 8,

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

[2] In the caption of his complaint and his amended complaint, Dixit names "FedEx Company" as a Defendant. He refers to the Defendant as FedEx Incorporated, however, throughout the rest of his complaints. On August 8, 2022, Dixit filed a notice correcting the name of the FedEx Company to FedEx Express Corporation. (ECF No. 43.) Defendant refers to itself as Federal Express Corporation. (*See* ECF No. 33.)

2022. (ECF No. 44.)³ The FedEx Defendants filed their response to the Sanctions Motion on August 18, 2022. (ECF No. 45.)

For the reasons stated herein, the Court recommends that both of Dixit's motions be denied.

## PROPOSED FINDINGS OF FACT

Dixit filed his complaint in this matter on September 27, 2021 (ECF No. 1), and an amended complaint on May 9, 2022 (ECF No. 27).⁴ In the amended complaint, he asserts that he is a citizen of the Republic of India and stayed in the United States for about 20 years. (ECF No. 27, at 4.) While stuck in India due to the COVID-19 pandemic, Dixit asked a friend in the United States to ship him a box of his belongings. (*Id.* at 4–5.) On or about November 12, 2020, Dixit's friend mailed, via the United States Postal Service, a suitcase to Dixit that was scheduled to arrive on November 18. (*Id.* at 5.) The suitcase contained Dixit and his son's clothes, their passports, his son's toys, "some important documents," and a laptop computer that was more than ten years old. (*Id.* at 5.) Dixit asserts that, during his last visit to the United States, his "son was kidnapped in Georgia" and "[h]is toys and clothes are the only memories" that he has of him. (*Id.* at 9.) He asserts that the passports and documents "obviously have a lot of use." (*Id.*)

---

³ On June 29, 2022, the Court entered an Order that addressed several pending motions, including Dixit's first sanctions motion. (ECF No. 41.)
⁴ Although Dixit filed his Injunction Motion before filing his amended complaint, the Court refers to the facts as alleged in the amended complaint, as it represents the operative pleading in this case. The FedEx Defendants filed a motion to dismiss Dixit's original complaint on April 27, 2022 (ECF No. 23), prompting Dixit's filing of the amended complaint that added four Defendants on May 9, 2022. (ECF No. 27.) The next day Dixit also filed a response to the motion to dismiss. (ECF No. 28.) As the Court explained in its previous order, the filing of the amended complaint rendered the motion to dismiss moot. (ECF No. 41.) The FedEx Defendants filed a motion to dismiss Dixit's amended complaint (ECF No. 34), but the motion is not ripe, as Dixit has appealed this Court's order extending his time to respond to the new motion to dismiss, that appeal remains pending, and Dixit has not yet responded to the motion to dismiss.

Dixit, who has a Ph.D. in aerospace engineering, asserts that the laptop contains his research data, several research projects, patent application materials, and publications. (*Id.*)

Dixit received a call on or about December 1, 2020, from Prakash Kumar, whose email ended in "fedex.com." (*Id.* at 5.) Kumar informed him that his package had arrived in India and that, in order to get it, Dixit had to deposit "INR 25,000" in customs charges. (*Id.*)[5] Dixit protested, explaining that the clothing and other items were old and purchased in India, and thus not subject to customs charges, and that he had carried the computer back and forth between India and the United States several times and was never charged a customs fee to bring it into India. (*Id.*) According to Dixit, Kumar told him to send an email to him and his boss, addressed to India's customs, explaining the situation. (*Id.*) Dixit sent an email the next day detailing the contents of the package, but the "email was never produced in front of Customs India." (*Id.* at 6.)

Dixit alleges that, on December 5, 2020, his package was delivered to Dehradun, his hometown, and he was asked to pay ₹32,000 to be allowed to retrieve it. (*Id.*) Dixit explained to the supervisor in the distribution center that he never agreed to pay a customs charge and informed the supervisor of the conversation that he had with Kumar. (*Id.*) After Dixit was directed to superiors at FedEx, he received a call from Babita Tiwari. (*Id.*) Dixit asserts that, after initially agreeing with him that he should not have to pay any customs charges, Tiwari informed him in an email that he would have to pay the customs charges. (*Id.*) Tiwari eventually stopped responding to Dixit's emails. (*Id.*)

---

[5] "INR" is the abbreviation for the Indian Rupee, and the symbol for the currency is "₹." On December 1, 2020, the exchange rate for $1 U.S. was ₹.013602. *See* https://www.x-rates.com/historical/?from=INR&amount=1&date=2020-12-01. So, ₹25,000 Indian Rupees was the equivalent of $340.04 U.S. dollars on that date.

3

Dixit asserts that the about-face taken by the employees of the FedEx Defendants was due to their contact with Gregory D. Golden, Karan Singh, Tanya Singh, and Kupferman & Golden Family Law, whom Dixit added as Defendants in his amended complaint.  (*Id.* at 7.)  According to Dixit, he and Tanya Singh have a son.  (*Id.*)  Karan Singh, an investment banker living in the United States, is Tanya's brother.  (*Id.*)  Golden is an attorney in Atlanta with the firm Kupferman and Golden.  (*Id.*)  Dixit alleges that the Singhs, Golden, and Golden's firm "conspired to file a fraudulent divorce case" against him in Georgia.  (*Id.*)  Dixit asserts that no state court in the United States has jurisdiction to hear or grant the dissolution of his marriage because he is not a resident of the United States.  (*Id.* at 7–8.)

Dixit appears to suggest that Tanya Singh, who "had a mad desire to immigrate to the US," used the divorce proceeding as a ruse to travel to the United States.  (*Id.* at 7–8.)  He asserts that Singh faced losses in multiple American courts that would end up denying her access to property in her son's name, would require her to return the boy to India, and would require her to return to India and lose her resident status in the United States.  (*Id.* at 8.)  According to Dixit, it was serendipitous for Singh that, at the same time she was facing this bad news, she came to learn that FedEx was in possession of the passports for Dixit and the couple's son.  (*Id.*)

Dixit asserts that the newly added Defendants "cajoled the FedEx Defendants to not hand me over the suitcase at any cost.  The FedEx Defendants acquiesced to the demands of the Civil Defendants."  (*Id.* at 8.)  Dixit asserts that, around October 6, 2021, nine days after he filed his original complaint, he phoned "Defendant FedEx and expressed willingness to pay the money that the Defendants has asked me to pay."  (*Id.* at 9; ECF No. 21, at 3.)  Dixit asserts that the representative on the call informed him that, because a lawsuit had been filed regarding the package, the representative was "duty bound to inform the higher office of Mr. Abhishek

4

Bhopale." (ECF No. 21, at 3; ECF No. 27, at 9.) According to Dixit, the representative also told him that, "since the FedEx has no legal basis of keeping the package, I should be getting my package by the next day or October 7, 2021." (ECF No. 21, at 3; ECF No. 27, at 9.) As of the date of the filing of the Injunction Motion, Dixit had not received his package.

Dixit asserts that the "FedEx Defendants have denied me access to my suitcase unless I pay the money to them," which constitutes "blackmail and extortion." (ECF No. 27, at 10.) Then, he asserts that, even after he agreed to pay FedEx the "extortion money," they have refused to provide him with the package, which he asserts constitutes "mail theft." (*Id.*) He lists his causes of action as "mail fraud, [racketeering], extortion and blackmail." (*Id.* at 11.)[6] Dixit alleges that the Defendants conspired to violate several provisions of the United States Code that deal with the delivery of the mails. (*See* ECF No. 27, at 11 (citing 18 U.S.C. §§ 1692–1693, 1701–1703, 1726).) He also asserts that those acts give rise to conspiracy claims that are actionable under 18 U.S.C. §§ 1961–68, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.*)

## PROPOSED CONCLUSIONS OF LAW

**I.    Standard of Review for Injunctive Relief**[7]

"A preliminary injunction is an 'extraordinary remedy,' not a matter of right." *Patel v. Glenn*, No. 21-3499, 2022 WL 16647974, at *3 (6th Cir. Nov. 3, 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "The purpose of a preliminary injunction is

---

[6] Although Dixit added Defendants in his amended complaint, he did not add any additional causes of action.

[7] A motion for a preliminary injunction is considered a dispositive motion and is thus subject to the filing of a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A), (B); *Vogel v. U.S. Off. Prod. Co.*, 258 F.3d 509, 514 (6th Cir. 2001) ("Pretrial matters that a magistrate judge is precluded from 'determining' pursuant to § 636(b)(1)(A) are called 'dispositive' because they are 'dispositive of a claim or defense of a party.'") (citing Fed. R. Civ. P. 72).

merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Preliminary injunctions that alter the status quo are specifically disfavored." *Eads v. Tennessee*, No. 1:18-CV-00042, 2019 WL 2443125, at *1 (M.D. Tenn. June 12, 2019) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion, for example." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Ultimately, a preliminary injunction is only awarded upon a "clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

> Courts consider four factors when determining whether to issue a preliminary injunction:
>
> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued; (3) whether the issuance of a preliminary injunction will cause substantial harm to third parties; and (4) whether the public interest would be served by the issuance of a preliminary injunction.

*G.S. by & through Schwaigert v. Lee*, 560 F. Supp. 3d 1113, 1121 (W.D. Tenn. 2021) (citing *Sandison v. Mich. High School Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). The factors are balanced against each other, and proving all four is not necessary to secure a preliminary injunction. *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998)). Notwithstanding that balancing, "the *existence* of an irreparable injury is mandatory." *Ohio v. Becerra*, No. 21-4235, 2022 WL 413680, at *2 (6th Cir. Feb. 8, 2022) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)).[8] "The Sixth

---

[8] In a concurring opinion in *D.T.*, Judge Nalbandian explained that, to the extent the Sixth Circuit's balancing approach implies that a complete absence of one of the factors could be overcome by a demonstration of the other factors, that result may run afoul of *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). In any event, he explained that, "[i]f we know one thing from *Winter*, it's that a plaintiff must establish irreparable injury. . . . There was,

Circuit has stated that the district court need not 'make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" *Doe v. Rhodes Coll.*, No. 2:16-cv-02308-JTF-tmp, 2016 WL 11611619, at *4 (W.D. Tenn. Oct. 25, 2016) (quoting *Jones v. City of Monroe, Mich.*, 341 F.3d 474, 476 (6th Cir. 2003)).

"[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)); *see also Harris v. Wells Fargo Bank, N.A.*, No. 2:18-CV-2400-JPM-dkv, 2018 WL 4896727, at *1 (W.D. Tenn. Oct. 9, 2018) ("A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits, but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required.") (quoting *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004)).

## II.     Standard of Review for Rule 11 Sanctions[9]

Federal Rule of Civil Procedure 11(b) requires that attorneys and unrepresented parties making representations to the Court in their filings certify that, inter alia, the filing "is not being

---

of course, no suggestion from the Supreme Court that the irreparable injury requirement could be balanced away (something that would make little sense in the world of extraordinary equitable remedies)." *D.T.*, 942 F.3d at 329.

[9] Rule 11 motions, like motions seeking injunctive relief, are considered dispositive, and, consistent with 28 U.S.C. § 636 and Administrative Order No. 2013-05, a magistrate judge must

presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1), (3).

Rule 11(c) details the sanctions that can be imposed upon "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). If a court finds that sanctions are warranted after providing the party notice and a reasonable opportunity to respond, the sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Such sanctions "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

Under Rule 11, "[d]istrict courts may sanction attorney conduct that is objectively unreasonable." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, No. 20-5567, 2022 WL 3211098, at *2 (6th Cir. Aug. 9, 2022) (citing *Montell v. Diversified Clinical Servs. Inc.*, 757 F.3d 497, 510 (6th Cir. 2014)). "If 'the attorney believes on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose,' then the conduct is not objectively unreasonable." *Id.* (quoting *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989)). "The

---

enter a report and recommendation, rather than an order dispensing of the motion. *See Jones v. Waste Mgmt., Inc. of Tennessee*, No. 1:09-cv-1009-JDB-egb, 2009 WL 2588714, at *1 (W.D. Tenn. Aug. 19, 2009) (citing *Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995 (6th Cir. 1992), for the proposition that "Rule 11 Motions for sanctions are dispositive and magistrate judges may only enter orders regarding them in consent cases").

8

district court exercises wide discretion in determining whether an attorney's conduct is reasonable." *Alpha Telecomms., Inc. v. Int'l Bus. Machs. Corp.*, 194 F. App'x 385, 391 (6th Cir. 2006) (citing *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)).

### III.  The Injunction Motion

As a preliminary matter, the Court finds that a hearing on Dixit's preliminary injunction motion is unnecessary, as it does not involve contested facts that require credibility determinations to decide whether relief should issue; to the extent facts are in dispute, they are not material to the injunction sought. *See Certified Restoration Dry Cleaning Network*, 511 F.3d at 553.

As to the relief requested, Dixit has failed to demonstrate that any of the four factors warranting a preliminary injunction weigh in his favor. It is therefore recommended that his motion for preliminary injunction be denied.

#### A.  Dixit's Likelihood of Success

The FedEx Defendants assert that Dixit stands little chance of succeeding on the merits of his claims. As discussed in the FedEx Defendants' initial motion to dismiss, Dixit complains of acts that mostly took place in India, and yet he seeks relief under RICO, which does not have extraterritorial application in civil lawsuits. (ECF No. 26, at 3–4.) The Supreme Court has made clear that, although "RICO applies to some foreign racketeering activity," "[a] private RICO plaintiff . . . must allege and prove a *domestic* injury to its business or property." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 340, 346 (2016).

Dixit's amended complaint makes some additional allegations regarding conduct potentially occurring in the United States. Dixit alleges that that "[t]he Civil Defendants cajoled the FedEx Defendants to not hand me over the suitcase at any cost," and "[t]he FedEx

9

Defendants acquiesced" to those demands "[b]ased on the insalubrious understanding" between the FedEx and Civil Defendants. (ECF No. 27, at 8–9.) Dixit's allegation that Defendants in the United States cajoled FedEx to withhold the package in India, however, is insufficient to demonstrate the sort of domestic injury that can give rise to a RICO cause of action.

A "[p]laintiff needs to show a domestic *injury*—not domestic racketeering activity." *Castellanos v. Worldwide Distrib. Sys. USA, LLC*, 290 F. Supp. 3d 692, 697 (E.D. Mich. 2017) (citing *RJR Nabisco*, 579 U.S. at 354). *Castellanos* involved RICO claims by a resident of Mexico based on his travel to the United States to pursue an offer of employment from a United States-based firm that never materialized. *Id.* at 695. The plaintiff alleged various forms of injury, including the funds he spent to arrange for travel to the United States and the loss of his job in Mexico to take to the United States position. *Id.* at 696. As to those two categories of injury, the court concluded that he suffered those harms before he arrived in the United States, and they were thus not actionable under RICO. *Id.* at 697. As in *Castellanos*, the injuries Dixit alleges he has suffered are not domestic injuries to his business or property. Those injuries were and continue to be based in India or otherwise are the sort of intangible harms for which RICO does not provide recovery.[10]

Relatedly, if Dixit is attempting to assert claims under the United States Code provisions that deal with the delivery of the mails independently of his conspiracy claims, his likelihood of success is similarly slim. None of the provisions Dixit seeks relief under provide a private cause

---

[10] Dixit also alleges that, based on Defendants' conduct, he has experienced "[l]oss of ability to enjoy my property located on 1107 Mecaslin Street, Atlanta, Georgia" and "[d]egradation in ability to adequately defend me and my son in the civil litigations by the Civil Defendants." (ECF No. 27, at 10.) Those assertions appear to be related to the marital and custody dispute that Dixit references in his amended complaint, and do not have anything to do with the underlying dispute here or any of Dixit's asserted causes of action in this lawsuit.

of action. *See, e.g.*, *Croley v. Hunting Creek Club Condo. Assoc.*, No. 105CV1326CMHBRP, 2005 WL 5269272, at *3 (E.D. Va. Dec. 13, 2005), *aff'd*, 201 F. App'x 953 (4th Cir. 2006) ("As a matter of law, [18 U.S.C. §§ 1693 and 1701] do not create a right of private action as they are criminal statutes, subject to enforcement by the federal government only."); *Millen v. DeJoy*, No. 21-2734-SHL-tmp, 2021 WL 6127867, at *2 (W.D. Tenn. Dec. 14, 2021), *report and recommendation adopted*, 2021 WL 6125852 (W.D. Tenn. Dec. 28, 2021) (finding that there is no private cause of action under § 1701, which "is a criminal statute that does not provide a basis for civil jurisdiction"); *Gross v. USAA Corp.*, No. 3:04-0230, 2005 WL 8174895, at *1 (M.D. Tenn. Oct. 12, 2005) (finding that § 1702, which proscribes "obstruction of correspondence," does not provide a private cause of action); *Woods v. McGuire*, 954 F.2d 388, 391 (6th Cir. 1992) (finding that "federal courts uniformly have held that there is no private right of action under [§ 1703]," "which prohibits Postal Service employees from tampering with mail in their possession"); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (finding that "there is no private right of action under" § 1726, among other statutes); *see also Bullis v. Kullman*, No. 2:19-CV-11724, 2019 WL 2743395, at *3 (E.D. Mich. July 1, 2019) (collecting cases demonstrating that 18 U.S.C. §§ 1702, 1703, 1705, and 1706 are federal criminal postal statutes that "do not provide a private cause of action for damages or other civil action for the alleged deprivation of rights").[11]

---

[11] Dixit cites another criminal statute, 18 U.S.C. § 1692, which places foreign mail on the same footing as domestic mail. It provides that "[e]very foreign mail, while being transported across the territory of the United States under authority of law, is mail of the United States, and any depredation thereon, or offense in respect thereto, shall be punishable as though it were United States mail." Though the Court has not identified authority that speaks to whether § 1692 provides a private right of action, the conclusion that it does not is informed by the Supreme Court's directive that "[t]he federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Thompson v. Thompson*, 484 U.S. 174, 187 (1988) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)). "The intent of

Given the foregoing, no matter the theory Dixit is advancing, he faces a very low likelihood of success, so the first factor weighs against his injunction request.

B.    Whether Dixit Would Face Irreparable Harm

The second factor also weighs against Dixit's request for an injunction, as it is not at all clear how he would face irreparable harm if the status quo remained in force. As the Sixth Circuit has explained, demonstrating such irreparable injury is mandatory to secure an injunction: "[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327. Moreover, "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Becerra*, 2022 WL 413680, at *2 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

Dixit's bag arrived in India in December 2020. Dixit filed his original complaint on September 27, 2021. (ECF No. 1.) Dixit filed his motion for injunction on April 17, 2022, some sixteen and a half months after his bag first arrived in India. Dixit asserts that "[k]eeping any package hostage for over 17 months will injure any customer." (ECF No. 21, at 5.) However, this generalized assertion is insufficient to demonstrate injury, as, "[t]o merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *Tiger Lily LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 499 F. Supp. 3d 538, 549 (W.D. Tenn. 2020) (quoting *D.T.*, 942 F.3d at 327); *Terzneh v. Fed. Nat'l Mortg. Ass'n*, No. 2:21-cv-02228-TLP-

---

Congress remains the ultimate issue, however, and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id.* at 179 (quoting *Nw. Airlines, Inc. v. Transp. Workers*, 451 U.S. 77, 94 (1981)). Nothing in the language of § 1692 or elsewhere suggests a Congressional intent to create a private right of action.

12

tmp, 2021 WL 4130555, at *4 (W.D. Tenn. Sept. 9, 2021) (finding the allegation that "irreparable harm is nearly always presumed in cases such as these" insufficient to establish the harm required for a temporary restraining order).[12]

Dixit also asserts that he has "faced tremendous difficulties because [he] did not have access to [the] documents" on his computer and that "the laptop might not be of any monetary value, but the files in the laptop have immense value for me and through me to the world." (ECF No. 27, at 9–10.) These vaguely stated harms are non-specific, speculative, and theoretical, as opposed to the certain and immediate sort that warrant issuance of a preliminary injunction. *See Saidak v. Schmidt,* 501 F. Supp. 3d 577, 598 (E.D. Tenn. 2020) (McCalla, J.) ("To constitute irreparable harm, an injury must be certain, great, and actual.") (citing *Lucero v. Detroit Pub. Sch.*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001)). Moreover, these unspecified injuries appear to be the sort that could be compensable by an award of monetary damages, and "it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Joy v. Burchyett*, No. 1:21-cv-01190-STA-jay, 2022 WL 3652670, at *3 (W.D. Tenn. Aug. 24, 2022) (quoting *1st Ave. Funding v. Fairchild Holdings, Inc.*, 2012 WL 3061080, at *2 (E.D. Mich. July 26, 2012)).

The Court is also unpersuaded that Dixit might be irreparably harmed by being unable to access the rest of the materials in the package. An inability to access his son's belongings, while potentially emotionally fraught, represents that sort of the harm for which "adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of

---

[12] Dixit fleetingly asserts that, "by keeping [his] property, the Defendants are violating my fifth amendment rights." (ECF No. 21, at 4.) However, as explained in *Tiger Lily*, constitutional violations rarely constitute the sort of irreparable injury that warrants a preliminary injunction. 499 F. Supp. 3d 538, 551 (W.D. Tenn. 2020) (collecting cases).

13

litigation," which "weighs heavily against a claim of irreparable harm." *Becerra*, No. 21-4235, 2022 WL 413680, at *2. Similarly, Dixit's arguments are unclear as to how being without his or his son's passports constitutes the sort of irreparable harm that warrants injunctive relief. For instance, Dixit generally refers to the "[l]oss of [the] ability to have [his] son return to the US because his passport is also in the suitcase" (ECF No. 27, at 11), but other parts of the record indicate his son is already in the United States (*see id.* at 8, 9), rendering unclear how his inability to access his son's passport could cause him irreparable injury. Either way, Dixit has not asserted that he cannot have the passports reissued (or that he has tried and been denied such a request). Moreover, he asserts that he is "stuck in India due to the Corona Virus pandemic," not due to any inability to access his passport. (ECF No. 27, at 4.) Ultimately, Dixit has failed to demonstrate that he will face imminent and irreparable injury absent an injunction, and the second factor also weighs against the issuance of an injunction.

  C.  <u>Whether Third Parties Would Be Substantially Harmed</u>

Evaluating the third factor "requires a court to balance the harm a plaintiff would suffer if its request for a preliminary injunction was denied with the harm the defendants would suffer if they were to be preliminarily enjoined. It also requires a court to assess the impact a preliminary injunction might have on relevant third parties." *Corp. Exp. Off. Prod. v. Warren*, No. 2:01-cv-02521-DBRE, 2002 WL 1901902, at *27 (W.D. Tenn. May 24, 2002). The FedEx Defendants assert that Dixit's "[m]otion fails to allege any harm that he will suffer if the request for an injunction is denied, making it impossible for the Court to conduct a balancing test concerning the harm the parties would suffer." (ECF No. 26, at 5.)

As outlined above, Dixit has described, albeit without much specificity, the sort of harm that might befall him in the absence of his package being returned to him. He further alleges that

14

releasing the package would actually be a benefit to the FedEx Defendants as they would "be relieved of the liability of keeping my package and storing costs that they are incurring." (ECF No. 21, at 5.) The FedEx Defendants do not identify any harm that they would suffer as a result of the issuance of an injunction. Neither Dixit nor the FedEx Defendants identify any third parties who would be harmed by an injunction, and the Court has not identified any. As Dixit has alleged at least some harms that can be factored into the balancing of harms at this stage, whereas FedEx has identified none, the third factor weighs slightly in favor of granting injunctive relief.

    D.    <u>Whether a Preliminary Injunction Serves the Public Interest</u>

Dixit's motion also fails to demonstrate that granting an injunction would serve the public interest. He asserts that, "[i]f mailing companies are thus allowed to usurp the packages of their customers for around 17 months, the whole postal process of civilized countries shall be in disarray. As such, it is in public interest that my package be returned to me forthwith." (ECF No. 21, at 5.) The FedEx Defendants counter that "the public interest will not be served if a recipient of an international shipment can refuse to pay duties and taxes levied by a foreign government, then file a suit and obtain a preliminary injunction to circumvent those duties and taxes." (ECF No. 26, at 5.)

Though it is obvious that the public has an interest in the efficient running of the mails, the approach that Dixit advances would result in far greater disarray than the status quo. If Dixit and other similarly situated postal customers were able to obtain injunctions against the collection of the duties by foreign governments—prior to the propriety of the imposition of the duties being determined—the inefficiencies to ensue would be immense, and the entanglement of

the courts in such determinations would undermine, rather than support, the public interest. As such, the fourth factor does not support Dixit's request for injunctive relief.

Consistent with the foregoing, and because the analysis of the four factors overwhelmingly indicates that an injunction should not be granted, the Court recommends that the Injunction Motion be denied.

## IV.     The Sanctions Motion

The basis for the Sanctions Motion is that, when the FedEx Defendants filed their motion for extension of time to answer his complaint (ECF No. 19), they misrepresented to the Court that Dixit did not oppose the request. Dixit asserts that "Defendants plainly misinformed this Court that the motion was [unopposed] because I never agreed to the extension request to the Court by Defendants." (ECF No. 44, at 3.) Dixit asserts that an email exchange Defendants attached to the motion reveals the deceit.

In the first email, sent from Defendants' counsel to Dixit on March 25, 2022, counsel explains that he intended to ask the Court to move Defendants' deadline to answer or otherwise respond to Dixit's complaint from April 7 to April 29, 2022. (ECF No. 19-1, at 2–3.) Counsel explained that he needed some additional time to investigate Dixit's allegations and was "going to be out of town and in court on a case next week, and have an argument to make in another case on April 6. The rules of our local federal court require that I consult with you first and ask if you will consent to the extension." (*Id.* at 3.)

In his email response Dixit wrote:

> Mr. Murrey,
> I have request to ease my agreeing to this change of deadline. My package is not being returned to me despite I having agreed to pay the charges. Keeping my package (personal property) thus might be another violation. (As of now, the package has been in FedEx's possession for close to 1.5 years.) As you may understand, I need my package. If possible, please direct your staff to give my

> package to me.  The matter is sub-judice and I will pay the charges if the Court so
> determines.
> Other than that I have no problems to I agree to the change of the deadline of your
> response to April 29.

(ECF No. 19-1, at 2.)

The FedEx Defendants characterized this response as Dixit stating "that he does not oppose the request." (ECF No. 19, at 2.) They assert that they "took Plaintiff's email to mean that he consented to the extension, and a fair reading of that email leads to the conclusion that FedEx's interpretation was reasonable." (*Id.* at 3.) Dixit disagrees. He asserts that, "[b]ased on the foregoing text it['s] clear that I did not agree to the Defendants['] filing for extension unless they returned my package which they are withholding without any basis in law and actually against it." (ECF No. 44, at 4.)

Although the Sanctions Motion asserts that Dixit made his approval of the FedEx Defendants' request for additional time contingent on the return of his package, the email is at best vague on this point.  In its earlier Order granting Dixit's motion to withdraw his original motion for sanctions, the Court addressed the exchange that Dixit once again places at issue here.[13]  The Court explained that, "[c]ontrary to Dixit's assertion, his correspondence with FedEx's counsel does not unequivocally demand a return of his package in exchange for his agreeing to the extension." (ECF No. 41, at 4.)  The Court characterized the correspondence as "[a]t best . . . ambiguous." (*Id.*)[14]  Dixit criticizes the Court's interpretation.  Regarding the

---

[13] Dixit's pending appeal of the earlier Order did not take issue with the rulings related to his earlier Motion for Sanctions, but instead addressed the Court's ruling on his motion for an extension and to add Defendants. (*See* ECF No. 42.)

[14] In granting Dixit's request to withdraw the motion the Court also explained that "[i]f Dixit seeks to re-assert a motion for sanctions against the FedEx Defendants related to this or any other conduct in the future, he must adhere to the Rule 11 requirements." (*Id.* at 5.) Those requirements include that the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected

17

FedEx Defendants' representation that he did not oppose their requested extension, he asserts "[i]f this is not a blatant lie then what is?" (ECF No. 41-1, at 2.)

The Court reiterates that the FedEx Defendants' reading of the plain language of Dixit's email is reasonable and therefore not subject to sanctions. The fact that the FedEx Defendants' reading of Dixit's email was reasonable is supported by several additional points. Most obviously, the FedEx Defendants attached Dixit's email to their motion for extension. (ECF No. 19-1.) The FedEx Defendants' description of their interpretation of the email can hardly be said to be a misrepresentation of the email, which they reproduced in full for the Court to review itself. And, of course, the Court read the email the same way that the FedEx Defendants did and granted the motion the same day it was filed. (ECF No. 20.)

Dixit alludes to other examples of FedEx's counsel's dishonorable conduct in his motion. He cites "the subject of this case" and "the fact that [Defendants] conspired with my ex-wife to steal my passport and the laptop that contains the research work of my doctoral degree." (ECF No. 44-1, at 3, 4.) In other words, in claiming the FedEx Defendants' actions are sanctionable, Dixit merely reiterates allegations from his amended complaint. He leaves unstated how such alleged conduct could run afoul of Rule 11(b)(3)'s mandate that "the factual contentions in any pleading, written motion or other paper . . . have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." These grounds for sanctions should also be denied.

Dixit also appears to assert that the FedEx Defendants should be sanctioned because they sought an extension of time while denying his request for the same. (ECF No. 44-1, at 4.) It is

---

within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Though it is not clear that Dixit adhered to this requirement, the FedEx Defendants do not address the potential procedural deficiencies in their response.

18

unlikely that the behavior Dixit cites could be said to be encompassed by Rule 11, which "applies primarily to pleading and papers." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002). But even if Rule 11 were applicable, to the extent Dixit's assertion is true, such behavior might be professionally discourteous, but it is not sanctionable because it is not the sort of "objectively unreasonable conduct" that is contemplated by Rule 11. *See id.*

For the reasons stated herein, it is recommended that Dixit's Second Motion for Sanctions be denied in its entirety.

## CONCLUSION

Consistent with the foregoing, it is recommended that Dixit's Emergency Motion for Preliminary/Interlocutory Injunctions and his Second Motion for Sanctions be DENIED.

Respectfully submitted this 13th day of February, 2023.

> s/Annie T. Christoff
> ANNIE T. CHRISTOFF
> UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.