## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| AKASH DIXIT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:21-cv-02602-JTF-atc |
| | ) |
| FEDRICK W. SMITH, BABITA | ) |
| TIWIRI, FEDEX COMPANY, TANYA | ) |
| SINGH, GREGORY D. GOLDEN, AND | ) |
| KUPFERMAN AND GOLDEN FIRM, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION TO GRANT MOTION TO DISMISS

Before the Court[1] is Defendants Fredrick W. Smith, Babita Tiwari, and Federal Express

Corporation's (the "FedEx Defendants")[2] Motion to Dismiss Plaintiff's Amended Complaint

Under F.R.C.P. 12(b)(2)(6), filed May 31, 2022.  (ECF No. 34.)  The same day the FedEx

Defendants filed the motion, they also filed a document they docketed as an answer to the

amended complaint.  (ECF No. 33.)  That document is not, in fact, an answer, but instead is the

memorandum of law meant to accompany the motion.

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States
Magistrate Judge for management and for all pretrial matters for determination and/or report and
recommendation as appropriate.
[2] In the caption of his complaint and his amended complaint, Dixit names "FedEx Company" as
a Defendant.  He refers to the Defendant as FedEx Incorporated, however, throughout the rest of
his complaints.  On August 8, 2022, Dixit filed a notice correcting the name of the FedEx
Company to FedEx Express Corporation.  (ECF No. 43.)  Defendant refers to itself as Federal
Express Corporation.  (*See* ECF No. 33.)

On June 29, 2022, the undersigned entered an Order that, inter alia, granted *pro se* Plaintiff Akash Dixit an extension of time until July 12, 2022, to file his response to the motion. (ECF No. 41, at 6.)  On July 12, 2022, Dixit appealed the decision granting the extension to District Judge John T. Fowlkes, Jr.  (ECF No. 42.)  On March 1, 2023, Judge Fowlkes denied that appeal and gave Dixit until March 15, 2023, to file his response to the motion to dismiss. (ECF No. 48.)  Dixit filed his response to the motion on March 16, 2023 (ECF No. 49), and then filed a Notice of Interlocutory Appeal to the Sixth Circuit Court of Appeals on March 27, 2023, seeking to appeal the District Court's March 1 order (ECF No. 50).  On April 10, 2023, the Sixth Circuit dismissed Dixit's appeal based on a lack of appellate jurisdiction (ECF No. 52) and entered judgment the same day (ECF No. 53).  The FedEx Defendants did not file a reply.

For the reasons stated herein, the Court recommends that the FedEx Defendants' motion be granted.

## PROPOSED FINDINGS OF FACT

Dixit filed his complaint in this matter on September 27, 2021 (ECF No. 1), and an amended complaint on May 9, 2022 (ECF No. 27).  In the amended complaint, he asserts that he is a citizen of the Republic of India and stayed in the United States for about 20 years.  (ECF No. 27 ¶ 1.)  While stuck in India due to the COVID-19 pandemic, Dixit asked a friend in the United States to ship him a box of his belongings.  (*Id.* ¶¶ 2, 6, 7.)  On or about November 12, 2020, Dixit's friend mailed, via the United States Postal Service, a suitcase to Dixit that was scheduled to arrive on November 18.  (*Id.* ¶ 7.)  The suitcase contained Dixit's and his son's clothes, their passports, his son's toys, "some important documents," and a laptop computer that was more than ten years old.  (*Id.* ¶ 8.)  Dixit asserts that, during his last visit to the United States, his "son was kidnapped in Georgia" and "[h]is toys and clothes are the only memories" that he has of

2

him.  (*Id.* ¶ 55.)  He asserts that the passports and documents "obviously have a lot of use."  (*Id.* ¶ 56.)  Dixit, who has a Ph.D. in aerospace engineering, asserts that the laptop contains his research data, several research projects, patent application materials, and publications.  (*Id.*)

Dixit received a call on or about December 1, 2020, from Prakash Kumar, whose email ended in "fedex.com."  (*Id.* ¶ 9.)  Kumar informed him that his package had arrived in India and that, to get it, Dixit had to deposit "INR 25,000" in customs charges.  (*Id.*)[3]  Dixit protested, explaining that the clothing and other items were old and purchased in India, and thus not subject to customs charges, and that he had carried the computer back and forth between India and the United States several times and was never charged a customs fee to bring it into India.  (ECF No. 27 ¶ 11.)  According to Dixit, Kumar told him to send an email to Kumar and his boss, addressed to India's customs, explaining the situation.  (*Id.* ¶ 12.)  Dixit sent an email the next day detailing the contents of the package, but the "email was never produced in front of Customs India."  (*Id.* ¶¶ 14–15.)

Dixit alleges that, on December 5, 2020, his package was delivered to Dehradun, his hometown, and he was asked to pay ₹32,000 to be allowed to retrieve it.  (*Id.* ¶¶ 16–17.)  Dixit explained to the supervisor in the distribution center that he never agreed to pay a customs charge and informed the supervisor of the conversation he had with Kumar.  (*Id.* ¶ 17.)  After Dixit was directed to superiors at FedEx, he received a call from Tiwari.  (*Id.* ¶ 21.)  Dixit asserts that, after initially agreeing with him that he should not have to pay any customs charges, Tiwari

---

[3] "INR" is the abbreviation for the Indian Rupee, and the symbol for the currency is "₹."  On December 1, 2020, the exchange rate for $1 U.S. was ₹.013602.  *See* https://www.x-rates.com/historical/?from=INR&amount=1&date=2020-12-01 [https://perma.cc/WNM4-UCLW].  So, ₹25,000 Indian Rupees was the equivalent of $340.04 U.S. dollars on that date.

informed him in an email that he would have to pay the customs charges. (*Id.* ¶¶ 21–22.) Tiwari eventually stopped responding to Dixit's emails. (*Id.* ¶ 24.)

Dixit asserts that the about-face taken by the employees of the FedEx Defendants was due to their contact with Gregory D. Golden, Karan Singh, Tanya Singh, and Kupferman & Golden Family Law, whom Dixit added as Defendants in his amended complaint (the "Civil Defendants"). (*Id.* ¶ 27.) According to Dixit, he and Tanya Singh have a son. (*Id.* ¶ 34.) Karan Singh, an investment banker living in the United States, is Tanya's brother. (*Id.* ¶ 32.) Golden is an attorney in Atlanta with the firm Kupferman & Golden. (*Id.* ¶ 35.) Dixit alleges that the Singhs, Golden, and Golden's firm "conspired to file a fraudulent divorce case" against him in Georgia. (*Id.*) Dixit asserts that no state court in the United States has jurisdiction to hear or grant the dissolution of his marriage because he is not a resident of the United States. (*Id.* ¶ 36.)

Dixit appears to suggest that Tanya Singh, who "had a mad desire to immigrate to the US," used the divorce proceeding as a ruse to travel to the United States. (*Id.* ¶¶ 30, 38.) He asserts that Singh faced losses in multiple American courts that would end up denying her access to property in her son's name, would require her to return the boy to India, and would require her to return to India and lose her resident status in the United States. (*Id.* ¶ 43.) According to Dixit, it was serendipitous for Singh that, at the same time she was facing this bad news, she came to learn that FedEx was in possession of the passports for Dixit and the couple's son. (*Id.* ¶ 45.)

Dixit asserts that the newly added Defendants "cajoled the FedEx Defendants to not hand me over the suitcase at any cost. The FedEx Defendants acquiesced to the demands of the Civil Defendants." (*Id.* ¶ 46.) Dixit asserts that, around October 6, 2021, nine days after he filed his original complaint, he phoned "Defendant FedEx and expressed willingness to pay the money that the Defendants had asked me to pay." (*Id.* ¶ 48.) Dixit asserts that the representative on the

4

call informed him that, because a lawsuit had been filed regarding the package, the representative

was "duty bound to inform the higher office of Mr. Abhishek Bhopale." (*Id.* ¶ 50.)  According to

Dixit, the representative also told him that, "since the FedEx has no legal basis of keeping the

package, I should be getting my package by the next day or October 7, 2021." (*Id.* ¶ 51.)

Dixit asserts that the "FedEx Defendants have denied me access to my suitcase unless I

pay the money to them," which constitutes "blackmail and extortion." (*Id.* ¶ 57.)  Then, he

asserts that, even after he agreed to pay FedEx the "extortion money," they have refused to

provide him with the package, which he asserts constitutes "mail theft." (*Id.*)  He lists his causes

of action as "mail fraud, [racketeering], extortion and blackmail." (*Id.* ¶ 69.)  Dixit alleges that

Defendants conspired to violate several provisions of the United States Code that deal with the

delivery of the mails. (*See* ECF No. 27 ¶ 68 (citing 18 U.S.C. §§ 1692–93, 1701–03, 1726).)  He

also asserts that those acts give rise to conspiracy claims that are actionable under 18 U.S.C.

§§ 1961–68, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.*)

## PROPOSED CONCLUSIONS OF LAW

### I.    Standard of Review for Failure to State a Claim Under Rule 12(b)(6)

To determine whether Plaintiff's complaint states a claim on which relief may be granted,

the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim

showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations

and quotations omitted).  The Court "construes the complaint in a light most favorable to [the]

plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly

suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir.

2012). Pleadings provide facial plausibility when they present "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[]

are not entitled to the assumption of truth. While legal conclusions can provide the framework

of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*,

550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of

entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a

claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the

claim, but also 'grounds' on which the claim rests.").[4]

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards

than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir.

2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416

F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se*

complaints, "however inartfully pleaded"). Nevertheless, *pro se* litigants "are not exempt from

the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*,

783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372,

376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)

("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf

of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the

courts from neutral arbiters of disputes into advocates for a particular party. While courts are

---

[4] The FedEx Defendants cite Rule 12(b)(2) as an addition basis for dismissal but make no
arguments regarding personal jurisdiction.

properly charged with protecting the rights of all who come before it, that responsibility does not

encompass advising litigants as to what legal theories they should pursue."); *Brown v.*

*Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a

plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*,

518 F.2d 1167, 1169 (6th Cir. 1975)).

## II.    The Motion to Dismiss

The FedEx Defendants assert first that, because RICO has no extraterritorial application,

Dixit's failure to allege a domestic injury to his business or property means he has failed to state

a RICO claim.  (ECF No. 33, at 5–7, 15.)  They also argue Dixit fails to plead the required

elements of "18 U.S.C. § 1962(c), which prohibits employment or association with an enterprise

engaged in a pattern of racketeering" (*id.* at 7), and that Dixit's claims fail to meet the applicable

particularity requirements.  (*Id.* at 11–12.)[5]  They also assert that Dixit's mail fraud allegations

must fail because the statutes he relies upon for those claims are criminal and do not provide for

a private civil cause of action.  (*Id.* at 14.)  Finally, the FedEx Defendants alternatively assert that

---

[5] The FedEx Defendants also argue that Dixit's failure to state a viable RICO claim under Rule 12(b)(6) renders this Court without subject-matter jurisdiction.  (ECF No. 33, at 7–11, 15.)  They do not explicitly cite Rule 12(b)(1), which governs subject-matter jurisdiction, but assert that no federal-question jurisdiction exists because the RICO claim is insufficiently pled.  (*Id.* at 7.)  However, "'[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover'; only where the 'claim is wholly insubstantial and frivolous' is jurisdiction lacking."  *Benalcazar v. Genoa Twp., Ohio*, 1 F.4th 421, 425 (6th Cir. 2021) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).  The FedEx Defendants do not argue that such standard is met here.  Moreover, as Dixit points out in his response (ECF No. 49, at 5), the FedEx Defendants do not address his assertion that subject-matter jurisdiction is proper based on the diversity of the parties under 28 U.S.C. § 1332 (*see* ECF No. 27 ¶¶ 2, 67).  Based on the pleadings, it appears that there is complete diversity between Dixit, a citizen of India and formerly a resident of the United States, and all Defendants, who appear to be either domiciled or headquartered in the United States.  *See* 28 U.S.C. § 1332(a)(2).  Dixit also alleges damages of $150,000, satisfying 28 U.S.C. § 1332(a)'s amount-in-controversy requirement.

Dixit's amended complaint must be dismissed because it asks this Court to declare invalid an act of a foreign government within its own territory, which violates the "act of state" doctrine. (*Id.* at 12–13.)

For the reasons below, Dixit's amended complaint fails to state a claim under Rule 12(b)(6). The Court recommends dismissing it in its entirety.[6]

A.    Dixit Fails to Allege a Domestic Injury, Warranting Dismissal

"Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016). The holding in *RJR* allowed that the application of this rule was "not always . . . self-evident, as disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic.'" 579 U.S. at 354. The Supreme Court recently rejected a bright-line rule that would locate a plaintiff's injury at his residence, instead explaining that resolution of such disputes requires "a case-specific inquiry that considers the particular facts surrounding the alleged injury." *Yegiazaryan v. Smagin*, 143 S. Ct. 1900, 1909 (2023).

---

[6] Dixit's amended complaint adds four additional defendants, the Civil Defendants, and no causes of action. (*Compare* ECF No. 1, with ECF No. 27.) As this Court previously pointed out, though it conducted a 28 U.S.C. § 1915(e)(2) screening of Dixit's original complaint and ordered process to be effected on the originally named Defendants, it had not screened the amended complaint as to the four added Defendants. (ECF No. 41, at 5–6 (citing *Wills v. Barber*, No. 1:12-CV-434, 2013 WL 609218, at *3 (W.D. Mich. Feb. 19, 2013) (reviewing a second amended complaint to determine if any newly-added defendants should be dismissed under the Prison Litigation Reform Act, 28 U.S.C. § 1915A(b)(1), which, like § 1915(e)(2), requires the dismissal of a complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted")).) The analysis herein is equally applicable to Dixit's claims against the Civil Defendants. To the extent Dixit alleges fraudulent conduct by the Civil Defendants distinct from the allegations involving the FedEx Defendants (*see* ECF No. 27 ¶ 35 (referring to the Civil Defendants' "conspir[acy] to file a fraudulent divorce case")), that conduct is not addressed in the amended complaint, as Dixit makes clear that his claims address the alleged theft of his package and extortion of customs fees (*see id.* at 4). Because the Court recommends dismissal of those claims against the FedEx Defendants under Rule 12(b)(6), the Court therefore recommends dismissing the same claims against the Civil Defendants pursuant to 28 U.S.C. § 1915(e)(2).

Dixit asserts that his injuries are properly characterized as domestic. He asserts that "the domestic injury is implicit in the premise of the complaint itself. My package and all the packages that FedEx is stealing or holding hostage in the name of the Indian government originated on the US soil." (ECF No. 49, at 6.) In support of his argument, Dixit relies on multiple out-of-circuit decisions that address what constitutes a "domestic injury." (*Id.* at 7–8.) One of those cases, *Bascuñán v. Elsaca*, involved a Chilean resident's allegations that his cousin misappropriated $64 million in property that was located in the United States. 874 F.3d 806, 809–10 (2d Cir. 2017). The *Bascuñán* court determined that, because the plaintiff "alleged injuries to property located within the United States, he satisfied civil RICO's domestic injury requirement." *Id.* at 810. The court found that "a plaintiff who is a foreign resident may . . . allege a civil RICO injury that is domestic," explaining that, "[a]t a minimum, when a foreign plaintiff maintains tangible property in the United States, the misappropriation of that property constitutes a domestic injury." *Id.* at 814. In distinguishing between foreign and domestic injuries, the court held that, "[w]here the injury is to tangible property, . . . absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." *Id.* at 820–21.

Unlike *Bascuñán*'s allegations of misappropriation of property located in the United States, here Dixit does not allege that any of his property was located in the United States when it was stolen or harmed. Instead, the basis of his complaint is that his property was delivered to his hometown in India and then was kept from him by entities within his home country. Whether the property "originated on US soil," as Dixit asserts, is irrelevant to determining whether an injury is a domestic one under *RJR* or *Bascuñán*. Although Dixit asserts that "[t]he FedEx

Defendants prevented me from enjoying my properties in the US" (ECF No. 49, at 7), he offers

no facts supporting that claim.

Nor do these facts align with those in *Yegiazaryan*, where the plaintiff, a resident of

Russia, sought to enforce a judgment he obtained in California, against a California resident,

after being injured by racketeering activity either taken in or directed from California, with the

aim of subverting the plaintiff's rights to enforce the judgment in the United States. 143 S. Ct. at

1911. Unlike in that case, where the Supreme Court held that the circumstances surrounding the

injury indicated it arose in the United States, *id.* at 1912, here Dixit has alleged that the

conspiracy's central purpose was to injure him in his home country—either by depriving Dixit,

who is in India, of his package or his money. Those allegations do not indicate that Dixit's

injuries could be characterized as domestic. As this Court previously explained:

> A "[p]laintiff needs to show a domestic *injury*—not domestic racketeering
> activity." *Castellanos v. Worldwide Distrib. Sys. USA, LLC*, 290 F. Supp. 3d 692,
> 697 (E.D. Mich. 2017) (citing *RJR*, 579 U.S. at 354). *Castellanos* involved RICO
> claims by a resident of Mexico based on his travel to the United States to pursue
> an offer of employment from a United States-based firm that never materialized.
> *Id.* at 695. The plaintiff alleged various forms of injury, including the funds he
> spent to arrange for travel to the United States and the loss of his job in Mexico to
> take to the United States position. *Id.* at 696. As to those two categories of
> injury, the court concluded that he suffered those harms before he arrived in the
> United States, and they were thus not actionable under RICO. *Id.* at 697. As in
> *Castellanos*, the injuries Dixit alleges he has suffered are not domestic injuries to
> his business or property. Those injuries were and continue to be based in India or
> otherwise are the sort of intangible harms for which RICO does not provide
> recovery.

(ECF No. 46, at 10.) That analysis is equally applicable here. Dixit has failed to allege a

domestic injury under RICO, and, as a result, he has failed to state a claim upon which relief can

be granted under Rule 12(b)(6). It is therefore recommended that Dixit's RICO claims be

dismissed.

B.     Dixit Fails to Allege Sufficient Facts to Support a RICO Claim

Even if Dixit's amended complaint could be said to have adequately alleged a domestic injury under RICO, it should still be dismissed because Dixit has failed to plead the elements of a RICO claim.  RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403–04 (6th Cir. 2012) (quoting 18 U.S.C. § 1962(c)).

Stating a claim under 18 U.S.C. § 1962(c) requires that Dixit plead "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Daniels v. Farm Credit Leasing Servs., Corp.*, No. 2:20-cv-02632-SHL-tmp, 2022 WL 19396414, at *13 (W.D. Tenn. July 27, 2022) (quoting *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012)). "[T]his Court has provided that there are '[f]ive elements [ ] common to all RICO violations: (1) the commission of at least two predicate RICO offenses; (2) the predicate offenses formed a 'pattern of racketeering activity'; (3) the existence of an 'enterprise' as defined under RICO; (4) a connection between the pattern of racketeering activity and the enterprise; and (5) damages resulting from the RICO violation."  *Brown v. Hanover Am. Ins. Co.*, No. 2:20-cv-02415-JPM-cgc, 2021 WL 2954412, at *3 (W.D. Tenn. July 14, 2021), *aff'd*, No. 21-5901, 2022 WL 1100461 (6th Cir. Apr. 13, 2022) (quoting *Bailey v. Memphis Bonding Co., Inc.*, No. 2:18-02115-SHM-tmp, 2019 WL 1300092, at *3 (W.D. Tenn. Mar. 21, 2019)).  The FedEx Defendants assert that Dixit has failed to sufficiently plead any of the § 1962 elements.

1.    *Dixit Fails to Sufficiently Plead Two Predicate Offenses*

The FedEx Defendants assert that Dixit has failed to plead the existence of at least two predicate acts with the requisite particularity.  The first requirement in pleading a RICO claim is to allege at least two predicate racketeering activities among those found in 18 U.S.C. § 1961. *See* 18 U.S.C. § 1961(5).  Dixit alleges that the FedEx Defendants engaged in mail and wire fraud, as well as extortion, which are made criminal in 18 U.S.C. §§ 1341, 1343, and 1951.  (*See* ECF No. 27 ¶ 69.)[7]  The FedEx Defendants attack only the mail and wire fraud predicate.

"Mail fraud consists of '(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme.'"  *Heinrich*, 668 F.3d at 404 (quoting *United States v. Jamieson,* 427 F.3d 394, 402 (6th Cir. 2005)).  "The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud."  *Id.* (citing *United States v. Daniel,* 329 F.3d 480, 486 n.1 (6th Cir. 2003) for the proposition "that the statutes share the same relevant language and the same analysis should be used for each").  Both mail and wire fraud must be pled with the heightened particularity outlined in Rule 9(b).  *Elam v. Aurora Servs. Loan, LLC*, No. 2:17-cv-02188-TLP-tmp, 2018 WL 2074202, at *4 (W.D. Tenn. May 2, 2018), *aff'd*, No. 18-5743, 2019 WL 7603379 (6th Cir. Aug. 9, 2019) (citing *Brown v. Cassens Trans. Co.*, 546 F.3d 347, 356 n.4 (6th Cir. 2008)).  To that end, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

---

[7] In his response, Dixit lists a litany of additional predicate offenses, asking "[w]ill it please the FedEx if I refile the complaint listing the above predicates?"  (ECF No. 49, at 13–14.)  A response to a motion to dismiss is an improper vehicle to amend a complaint, and any additional allegations in Dixit's response will not be considered.  *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) ("If plaintiffs believe they need to supplement their complaint with additional facts to withstand [a motion to dismiss] . . . they have a readily available tool: a motion to amend the complaint under Rule 15.  They cannot amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.") (citations and quotations omitted).

*But see id.* ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "In other words, '[g]eneralized and conclusory allegations do not satisfy Rule 9(b).'" *Id.* (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)). To satisfy the heightened pleading requirements of Rule 9(b) when pleading predicate acts of mail or wire fraud, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich*, 668 F.3d at 404 (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)). "[W]here mail fraud and wire fraud are alleged . . ., courts are particularly sensitive to these pleading requirements, requiring 'specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *Polzin v. Barna & Co.*, No. 3:07-CV-127, 2007 WL 2710705, at *4 (E.D. Tenn. Sept. 14, 2007) (quoting *Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994)).

The FedEx Defendants assert that Dixit's allegations related to mail and wire fraud lack the particularity required by Rule 9(b) and thus inadequately state RICO predicate acts. They argue Dixit has "fail[ed] to allege a single date on which a specific act occurred. In fact, the Amended Complaint does not provide a single date relating to a predicate act." (ECF No. 33, at 8.) The FedEx Defendants point out that Dixit instead simply alleges that someone initiated contact between the FedEx and Civil Defendants and that the Civil Defendants "cajoled" the FedEx Defendants into not handing over Dixit's suitcase. (*Id.* at 8–9.)

Dixit counters that he is "not God" and "do[es] not know each and every detail of the collaboration between Defendants." (ECF No. 49, at 9–10.) He relies in part on a filing the FedEx Defendants attached to their response to an earlier motion in which Dixit sought an

13

extension of time.  (*See* ECF No. 39-1.)  That filing, an order from the Court of Appeals from the

State of Georgia, described Dixit as a vexatious litigator and placed heavy restrictions on his

filing privileges.  (*Id.*)  Dixit contends that the FedEx Defendants' ability to find and produce a

court filing that reflects poorly on him is "evidence of active collaboration between the FedEx

and Civil Defendants."  (ECF No. 49, at 10.)  Dixit also contends that "[t]he FedEx Defendants

never denied any allegation under oath."  (*Id.*)

Neither of those contentions justifies Dixit's failure to satisfy the pleading requirements

under Rules 12(b)(6) and 9(b).  The vague allegations that "[a] contact was initiated between the

Civil Defendants and FedEx Defendants," and that the Civil Defendants "cajoled the FedEx

Defendants to not hand [him] over the suitcase at any cost," without more specificity, are not

sufficiently particular.  Dixit has failed to allege any of the four required elements of mail or wire

fraud under Rule 9(b) as to these alleged conspiratorial interactions: he has not identified a single

fraudulent statement, and it necessarily follows that he has failed to allege who made such a

statement, where it was made, whether it was made by mail or wire at all, or how it was

fraudulent.[8]  To the extent that Dixit contends that the FedEx Defendants regularly defraud

others in the name of government duties and taxes (*see* ECF No. 49, at 12), he similarly does not

allege the identity of those other customers or specifically allege the time, place, or contents of

the misrepresentations made to them, rendering any such allegations insufficient to establish a

predicate act.  *See Bailey v. Memphis Bonding Co., Inc.*, No. 2:18-cv-02115-SHM-tmp, 2019

---

[8] Though Dixit provides allegations regarding communications between himself and various
FedEx employees, he does not contend that any of the contents of those communications was
fraudulent.  (*See* ECF No. 27 ¶¶ 9–25.)  A review of those communications reveals that they
largely consisted of the employees asking Dixit questions and proposing solutions, not providing
false information.

WL 1300092, at *6 (W.D. Tenn. Mar. 21, 2019).  Because Dixit has failed to allege mail or wire

fraud with the requisite particularity, neither can constitute a predicate act under RICO.

The FedEx Defendants do not address Dixit's extortion claim.  Assuming, without

deciding, that Dixit has plausibly alleged that the FedEx Defendants engaged in extortion, that

allegation, on its own, is insufficient to sustain a RICO claim.  Dixit's failure to sufficiently state

a claim for either mail or wire fraud leaves his RICO claim reliant on a single act of alleged

extortion, which is insufficient to satisfy the requirement that he identify at least two predicate

offenses to state a RICO claim.  *See Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 597 (6th

Cir. 2022) (finding that, when only one of five alleged predicate acts was sufficiently alleged,

dismissal was appropriate).  Dixit's failure to sufficiently plead at least two predicate RICO

offenses is fatal to his claims.

2.    *Dixit Fails to Plead the Existence of an Enterprise*

RICO defines "enterprise" to "include[] any individual, partnership, corporation,

association, or other legal entity, and any union or group of individuals associated in fact

although not a legal entity."  18 U.S.C. § 1961(4).  In the Sixth Circuit, a plaintiff can establish

an association-in-fact enterprise "by showing 1) that the associated persons formed an ongoing

organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the

organization was separate from the pattern of racketeering activity in which it engaged."  *Brown*,

2021 WL 2954412, at *3 (quoting *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696,

699 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553

U.S. 639 (2008)).  "[S]imply conspiring to commit a fraud is not enough to trigger [RICO] if the

parties are not organized in a fashion that would enable them to function as a racketeering

organization for other purposes."  *Id.* at *4 (quoting *VanDenBroeck*, 210 F.3d at 699).

Even if Dixit alleged facts sufficient to plead that the FedEx and Civil Defendants conspired to commit a fraud, he offers no "allegations of an organizational structure or coordinated activity by the alleged enterprise that suggests that they would be able to function as a racketeering organization outside of a single alleged instance of fraud." *See id.* Dixit suggests there is evidence of an enterprise based on the fact that the "FedEx Defendants are actively borrowing from the Civil Defendants in accessing the legal filings between me and the Civil Defendants." (ECF No. 49, at 11.) Dixit is again referring to the filing from the Georgia Court of Appeals case involving him and his ex-wife as evidence of Defendants' collaboration. But Dixit's amended complaint itself refers to his Georgia litigation with his ex-wife. (ECF No. 27 ¶¶ 35–43.) The FedEx Defendants' ability to locate the Georgia order is thus unsurprising and cannot serve to plausibly suggest they were engaged in an enterprise with the Civil Defendants. Ultimately, accessing publicly filed court orders is insufficient to demonstrate collaboration between the Defendants, and it certainly does not suggest a broader racketeering organization.

Dixit also suggests that the FedEx Defendants' refusal to deliver his package after he offered to pay the fees is additional evidence of an enterprise. However, Dixit's amended complaint explains that he offered to pay the fees around October 6, 2021, nine days after he filed his original complaint. (*Id.* ¶ 48.) Upon making that offer, Dixit was told that the existence of the court case required that the request be escalated. (*Id.* ¶ 50.) The explanation from a FedEx employee that a package that was the subject of ongoing litigation could not be immediately turned over to the party who instigated the litigation is more plausible than Dixit's alternative explanation that the refusal to provide his package demonstrated collaboration between the FedEx and Civil Defendants.

Other than these allegations, Dixit offers only conclusory and nonspecific statements regarding coordination between the FedEx Defendants and the Civil Defendants.  (*See id* ¶ 27 ("The reason for the change of sudden change of course is the contact between the FedEx Defendants and the Civil Defendants . . . and continuation of a conspiracy in the US."), ¶ 29 ("A contact was initiated between the Civil Defendants and FedEx Defendants."), ¶ 45 ("It was serendipity that the Civil Defendants came across FedEx Defendants . . . ."), ¶ 46 ("The Civil Defendants cajoled the FedEx Defendants to not hand me over the suitcase at any cost.  The FedEx Defendants acquiesced to the demands of the Civil Defendants."), ¶ 47 (referencing "the insalubrious understanding between the FedEx and the Civil Defendants"), ¶ 57 (describing the FedEx Defendants as "being duly engaged with the Civil Defendants"), ¶ 61 ("Civil Defendants are directly involved in the theft as they cajoled and favorably obliged the FedEx Defendants to not hand me back the package . . . .").)  Such conclusory statements, lacking in factual support, are insufficient to plead the existence of an enterprise.  *See Smith v. Smith*, No. 2:15-CV-241, 2016 WL 4703834, at *4 (E.D. Tenn. Sept. 8, 2016) (finding that bare recitals that the defendants were acting in concert were insufficient to move claims "from possible to plausible as required under *Twombly/Iqbal*"); *Baird v. Daniels*, No. 1:12-CV-945, 2014 WL 1407945, at *5 (S.D. Ohio Apr. 11, 2014) (dismissing RICO claims when "the allegations regarding the structure of the enterprise are legal conclusions couched as factual allegations"); *Betulius v. Hanna*, No. 4:96-CV-92, 1996 WL 900413, at *5 (W.D. Mich. Dec. 10, 1996) ("Conclusory allegations that disparate parties were associated in fact . . . are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an 'enterprise.'" (quoting *Davis v. Hudgins*, 896 F. Supp. 561, 568 (E.D. Va. 1995))).

Dixit's allegation of an enterprise between the FedEx Defendants and the Civil Defendants is simply not plausible, as he has failed to allege that the FedEx Defendants and the Civil Defendants formed an ongoing organization, formal or informal, that they functioned as a continuing unit, or that the organization, to the extent there was one, was separate from the pattern of racketeering activity in which it engaged.

       3.    *Dixit Fails to Plead a Pattern of Racketeering Activity or a Connection Between the Activity and the Enterprise*

Dixit has also failed to demonstrate that the FedEx and Civil Defendants engaged in a pattern of racketeering activity or that there was a connection between that activity and the enterprise. A pattern of racketeering is defined as at least two acts of racketeering activity occurring within ten years of each other. *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 804 (W.D. Tenn. 2005) (citing 18 U.S.C. § 1961(5)). "A '*pattern* of racketeering activity' requires related predicate acts of racketeering which continued during a substantial period or which by their nature forebode of future criminal conduct." *Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 890 n.10 (6th Cir. 2000) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240–43 (1989)). Ultimately, such a pattern "is established by showing 1) a relationship between predicate acts, and 2) the threat of continuity." *Beard*, 354 F. Supp. 2d at 804 (citing *H.J.*, 492 U.S. at 238). "This is known as the 'relationship plus continuity' test." *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 454 (6th Cir. 2019) (citing *Heinrich*, 668 F.3d at 409).

The FedEx Defendants do not address the relationship prong of the "relationship plus continuity" test. Instead, they assert that Dixit has failed to plead any facts establishing continuity, as he only offers "allegations [that] are really just an objection to paying duties and taxes assessed by the Indian government and do not establish any specific time frame, and the

Amended Complaint is lacking in any threats of continued activity."  (ECF No. 33, at 11.)  Dixit

counters that "[t]he whole issue is that FedEx regularly swindles people in the name of

government duties and taxes."  (ECF No. 49, at 12.)

　　　　Dixit's failure to sufficiently plead the existence of two predicate acts necessarily

undermines any attempts at demonstrating a pattern of racketeering activity.  Yet, even if the

alleged predicate acts were sufficiently pled, they do not satisfy the continuity prong of the

pattern test.  "The continuity prong of the test can be satisfied by showing either a 'close[d]-

ended' pattern (a series of related predicate acts extending over a substantial period of time) or

an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct

extending beyond the period in which the predicate acts were performed)."  *Heinrich*, 668 F.3d

at 409–10 (quoting *H.J.*, 492 U.S. at 241–42).

　　　　The scheme Dixit alleges does not include acts that occurred over a substantial period of

time, forestalling a demonstration of closed-ended continuity.  "A closed period of continuity

may be demonstrated 'by proving a series of related predicates extending over a substantial

period of time.'"  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006) (quoting

*H.J.*, 492 U.S. at 242).  Dixit alleges that his first interaction with FedEx regarding his package

was on December 1, 2020, and the most recent was on October 6, 2021.  (ECF No. 27 ¶¶ 9, 48.)

That less-than-eleven-month window is not a substantial amount of time.  *See, e.g.*, *Heinrich*,

668 F.3d at 410 ("Predicate acts extending over a few weeks or months . . . do not satisfy this

[closed-ended continuity] requirement." (quoting *H.J.*, 492 U.S. at 242)); *Moon*, 465 F.3d at 726

("Even assuming a period of two-and-a-half years of racketeering activity, these allegations do

not give rise to closed-ended continuity."); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th

Cir. 1994) (finding a total scheme lasting only seventeen months insufficient to satisfy the closed-ended continuity requirement).

Nor does Dixit sufficiently allege open-ended continuity. The existence of open-ended continuity "turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projecting into the future" and can be "pleaded through facts showing 'a distinct threat of long-term racketeering activity,' or by showing 'that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Id.* (quoting *H.J.*, 492 U.S. at 242). The fraud Dixit alleges involves coordination between the FedEx Defendants and the Civil Defendants, who allegedly conspired to prevent him from getting access to his package and to charge him invalid customs fees. Those unsupported allegations do not plausibly allege the threat of repetition or that such conduct will project into the future.[9] Dixit instead has pled the sort of terminable scheme, involving only a single victim, that would not continue beyond the accomplishment of Defendants' alleged goal. *See Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 805 (6th Cir. 2015) (collecting cases that illustrate short-term, terminable schemes). As such, he has failed to allege facts that would show the sort of "'long-term criminal conduct' Congress sought to prohibit with RICO" or that could suggest open-ended continuity. *Vemco*, 23 F.3d at 135.[10]

As described above, Dixit has failed to allege predicate acts that could support a claim that the FedEx Defendants engaged in a pattern of racketeering activity or a connection between

---

[9] Dixit offers only the conclusory statement, without plausible factual support, that "someone needs to hold their ground and bring to light the racketeering and illegal conduct of the Defendants to light. Otherwise, the Defendants will continue their racketeering activities unchecked." (ECF No. 27 ¶ 65.)

[10] Dixit also appears to allege that FedEx regularly extorts customs fees from Indian residents. He asserts that during his "small talk" with FedEx employee Prakash Kumar in December 2020,

that activity and the enterprise.  Even if he had, however, he has failed to demonstrate a threat of

their continuity.  That failure is another reason his RICO claims are insufficiently pled under

Rule 12(b)(6).

     C.     <u>Dixit's Claims for Mail Fraud Under the Criminal Statutes Fail to State a Claim</u>

     Dixit claims that the FedEx Defendants committed mail fraud pursuant to 18 U.S.C.

§§ 1692, 1693, 1701, 1702, 1703, and 1726.  The FedEx Defendants argue that these statutes do

not provide for a private civil cause of action (ECF No. 33, at 14), and Dixit does not attempt to

rebut that position.  As this Court previously explained, "[n]one of the provisions Dixit seeks

relief under provide a private cause of action."  (ECF No. 46, at 10–11 (collecting cases

demonstrating that §§ 1693, 1701, 1702, 1703, and 1726 do not provide the basis for private

rights of action and explaining that, though "the Court has not identified authority that speaks to

whether § 1692 provides a private right of action, the conclusion that it does not is informed by

the Supreme Court's directive that "[t]he federal judiciary will not engraft a remedy on a statute,

no matter how salutary, that Congress did not intend to provide") (quoting *Thompson v.*

*Thompson*, 484 U.S. 174, 187 (1988)).)  To the extent that Dixit has asserted claims for mail

fraud violations under these statutes, those claims should be dismissed under Rule 12(b)(6).

---

Kumar told him "that the same is the situation with several other Indians.  He also told me that
his company regularly charges these amounts."  (ECF No. 27 ¶ 13.)

     Assuming, without deciding, that such allegations plausibly allege that FedEx has a
regular business practice of extorting customs fees from Indian customers, sufficient to show
open-ended continuity, these allegations fail the relationship prong of the test.  The criminal
enterprise alleged by Dixit in this case is the conspiracy between the FedEx Defendants and the
Civil Defendants to steal his package and extort money from him: "FedEx Defendants after
being duly engaged with the Civil Defendants have not agreed to give my package back even
after I agreed to pay the extortion money."  (ECF No. 27 ¶ 57.)  The purpose of that alleged
enterprise is wholly divorced from any suggestion that FedEx regularly extorts fees from other
Indian customers, which would be a distinct racketeering operation having nothing to do with the
alleged withholding of Dixit's package or his dispute with his ex-wife.

## CONCLUSION

Consistent with the foregoing, it is recommended that the FedEx Defendants' Motion to Dismiss Plaintiff's Amended Complaint Under F.R.C.P. 12(b)(2)(6) be GRANTED.[11]  It is further recommended that the claims against the remaining Defendants be dismissed for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2).  Because the Court is recommending that all of Dixit's claims against all Defendants be dismissed, it also recommends that judgment be entered against Dixit.

Respectfully submitted this 11th day of August, 2023.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.

---

[11] The FedEx Defendants alternatively assert that Dixit's requested relief should be denied on the basis that is violates the "Act of State" doctrine.  (ECF No. 33, at 12–13.)  Because the Court is recommending dismissal of the amended complaint under Rule 12(b)(6), it does not reach this argument.